TEXACO, INC., Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent,
Mrs. James R. Dougherty, et al.,
Intervenors.

CONSOLIDATED GAS SUPPLY COR-
PORATION, Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent,
Mrs. James R. Dougherty et al.,
Intervenors.

James M. FORGOTSON, Sr., an Independ-
ent Natural Gas Producer, Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent,
Mrs. James R. Dougherty et al., Texaco,
Inc., Intervenors.

PUBLIC SERVICE COMMISSION OF the
STATE OF NEW YORK, Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent, Texaco, Inc.,
Intervenor.

INDEPENDENT NATURAL GAS ASSO-
CIATION OF AMERICA, Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent.

WARREN PETROLEUM CORPORA-
TION, Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent.

TENNESSEE GAS PIPELINE COM-
PANY, a Division of Tenneco, Inc.,
Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent.

PHILLIPS PETROLEUM COMPANY,
Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent, Texaco, Inc., Intervenor.

TEXACO, INC., Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent.

Nos. 71–1560, 71–1561, 71–1603, 71–1612,
71–1627, 71–1647, 71–1722, 71–1727
and 71–1729.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 25, 1972.

Decided Dec. 12, 1972.

Rehearing Denied Feb. 5, 1973.

Fahy, Senior Circuit Judge, filed
dissenting opinion.

Mr. Michael J. Manning, Atty., F.P.C., for respondent. Messrs. Gordon Gooch, Gen. Counsel, Leo E. Forquer, Solicitor, and George W. McHenry, Jr., First Asst. Solicitor, F.P.C., were on the brief, for respondent. Mr. J. Richard Tiano, First Asst. Solicitor, F.P.C., at the time the record was filed, also entered an appearance for respondent.

Mr. Benjamin F. Vaughan, III, Austin, Tex., with whom Mr. R. James George, Jr., Austin, Tex., was on the brief, for intervenors Mrs. James R. Dougherty and others.

Messrs. J. Donald Annett, Houston, Tex., and Kirk W. Weinert, Washington, D. C., were on the brief for petitioners in No. 71–1560 and No. 71–1729 and Intervenor, Texaco, Inc.

Messrs. Norman A. Flaningam, Charles R. Brown, and Richard J. Connor, Washington, D. C., were on the brief, for petitioners in No. 71–1561.

Mr. Edward H. Forgotson, was on the brief, for petitioners in No. 71–1603.

Messrs. Norman A. Flaningam, Charles R. Brown, and Richard J. Connor, Washington, D. C., were on the brief, for petitioners in No. 71–1561.

Messrs. L. Dan Jones and William I. Powell, Washington, D. C., filed a brief on behalf of the Independent Petroleum Assn. of America, as amicus curiae urging affirmance.

Messrs. Philip R. Ehrenkranz, Washington, D. C., and Clyde O. Martz, Denver, Colo., filed a brief on behalf of Anderson Oil Co. and others and Hickerson Oil Co., and others as amici curiae urging affirmance.

Mr. Richard A. Solomon, Washington, D. C., with whom Messrs. Peter H. Schiff, Albany, N. Y., and Saul W. Baernstein, were on the brief, for petitioner in No. 71–1612.

Mr. Christopher T. Boland, Washington, D. C., with whom Messrs. Robert G. Hardy and Jerome J. McGrath, Washington, D. C., were on the brief, for petitioner in No. 71–1627, also argued for petitioners in Nos. 71–1561 and 71–1722.

Mr. John T. Ketcham, Washington, D. C., with whom Messrs. Kenneth Heady, Bartlesville, Okl., Warren M. Sparks, Tulsa, Okl., Charles E. McGee and Robert J. Haggerty, Washington, D. C., were on the brief, for petitioner in Nos. 71–1647 and 71–1727, also argued for petitioners in Nos. 71–1560 and 71–1729.

Before FAHY, Senior Circuit Judge, and ROBINSON and WILKEY, Circuit Judges.

WILKEY, Circuit Judge:

█ Petitioners seek review of orders of the Federal Power Commission[1] in Docket No. R–393, a rulemaking proceeding instituted by a Notice[2] entitled "Exemption of Small Producers From Regulation."[3] These orders exempted all existing and future sales by "small producers"[4] from direct rate regulation. Small producers could, thereunder, contract for the sale of their gas at any obtainable rates. The Commission proposed indirectly to control such rates by regulating, under standards set forth in the orders, the costs allowed to be incorporated in the rates of large producers and pipelines on resale of gas which originated with small producers. Even if resale rates were found excessive because the cost of small producer gas was "unreasonably high," small producers would be under no duty to refund the absorbed excess to the large producers and pipelines. Since we conclude that the Commission exceeded its authority under the Natural Gas Act, the orders in Docket No. R-393 must be set aside.

## I.  The Ends

Our conclusion herein challenges neither the Commission's motives nor its opinion that some form of deregulation of small producers might benefit the consumers of natural gas. The orders represent an imaginative attempt to deal with problems of enormous magnitude. A critical gas shortage, which has been judicially recognized,[5] faces the nation. The Federal Power Commission is confronted with an ever-increasing regulatory burden—and limited resources. These combine to produce administrative delay and threaten the Commission's ability adequately to control natural gas prices.

Since small gas producers have historically accounted for as much as 80% of new exploration, but have less ready access to the necessary capital than do large producers, after thorough study the Commission concluded that generally beneficial exploration activity would be encouraged by assuring stable revenue flows to small producers. From deregulation of small producers, realization of their full contract prices at market levels would become a certainty. Since the small producers only account for 10.5% of the gas put into pipelines, the FPC felt that any cost hike resulting from deregulation would have a minimal effect on consumers. Obviously, any step towards deregulation would lessen the Commission's administrative load.

This court also recognizes that the Commission was engaged, in good faith, in what it felt was a valid extrapolation from judicial comments as to which solutions to these problems would be accepta-

1.  The Commission's original Order No. 428 was issued on 18 March 1971. It was subsequently modified by Order No. 428–A, issued 9 April 1971, and Order No. 428–B, issued 15 July 1971.

2.  Issued 23 July 1970. It should be noted that some of the petitioners challenge the sufficiency of that notice. Since all important objections were raised and considered prior to the action of the Commission in Order No. 428–B, we do not agree that further publication is required by the Administrative Procedure Act. In any event, given our disposition of these cases, that issue. need not be reached.

3.  Joint Appendix (hereafter "J.A.") at 1. The resulting Order 428 was entitled "Order Establishing Blanket Certificate

Procedure For Small Producer Sales and Providing Relief From Detailed Filing Requirements." As this opinion will explain, the actual terms of this order belie its title's suggestion that its effect is more limited than that implied by the broad title of the Notice of Proposed Rulemaking.

4.  Small producers are defined as those with jurisdictional sales of less than 10,000,000 Mcf of gas per year. Such producers would be required to submit annually a document setting forth pertinent information concerning their jurisdictional sales.

5.  See Southern Louisiana Area Rate Cases v. FPC, 428 F.2d 407, 437 (5th Cir. 1970), cert. denied, 400 U.S. 950, 91 S.Ct. 241, 27 L.Ed.2d 257.

ble. In FPC v. Hunt, Justice Clark made the following suggestion for dealing with the Commission's docket congestion:

> [T]he techniques of the National Labor Relations Board might be studied with a view to determining whether its exemption practices . . . might be helpful in the solution of the Commission's problems.[6]

In more recent cases, this court has explicitly encouraged experimentation to meet the threat of a gas shortage.[7] Given traditional judicial deference to the agency's expertise, the FPC obviously concluded that it would be allowed to embark upon, and later evaluate, an experimental approach to achieving the purposes of the Natural Gas Act.

## II. *The Means*

However, Congress has prescribed limits on the Commission's authority. The orders considered here can be upheld only if they comply with the specific provisions of the Natural Gas Act. The Commission may, of course, classify different types of producers, alter some filing requirements, and "make the pragmatic adjustments which may be called for by particular circumstances."[8] However, the FPC must act "within the ambit of [its] . . . statutory authority."[9] The Commission may not ignore the command of Section 4 (15 U.S.C. § 717c(a)):

> *All* rates and charges made, demanded, or received by *any* natural-gas company for or in connection with the . . . sale of natural gas subject

to the jurisdiction of the Commission . . . shall be just and reasonable, and *any* such rate or charge that is not just and reasonable is hereby declared to be unlawful. [Emphasis added.][10]

The Commission must also heed similar language in Section 5 (15 U.S.C. § 717d):

> Whenever the Commission, after a hearing had upon . . . complaint of any State, municipality, State commission, or gas distributing company, shall find that *any* rate, charge or classification demanded, observed, charged, or collected by *any* natural-gas company in connection with *any* . . . sale of natural gas, subject to the jurisdiction of the Commission . . . is unjust, unreasonable, unduly discriminatory, or preferential, the Commission *shall* determine the just and reasonable rate, charge, classification . . . or contract to be thereafter observed and in force, and *shall* fix the same by order . . . [Emphasis added.]

Ever since Phillips Petroleum Co. v. Wisconsin, the Commission, even against its own will, has had a judicially recognized duty to assume "jurisdiction over the rates of *all* wholesales of natural gas in interstate commerce"[11] to insure that all such rates comply with the statutory standard.

## A.

We cannot accept the Commission's argument that it may shirk this duty. To

6. 376 U.S. 515, 527, 84 S.Ct. 861, 868, 11 L.Ed.2d 878 (1964).

7. Public Service Commission v. FPC, 151 U.S.App.D.C. 307 at 313, 467 F.2d 361 at 367 (decided March 29, 1972), (rehearing denied May 19, 1972) ; Public Service Commission v. FPC, 149 U.S.App.D.C. 421 at 425, 463 F.2d 824 at 828 (Decided May 16, 1972).

8. Federal Power Commission v. Natural Gas Pipeline Co., 315 U.S. 575, 586, 62 S.Ct. 736, 743, 86 L.Ed. 1037 (1942).

9. FPC v. Natural Gas Pipeline Co., *supra.*

10. The Supreme Court has described "the fixing of 'just and reasonable' rates" as "the heart of the new regulatory system." FPC v. Hope Natural Gas Co., 320 U.S. 591, 611, 64 S.Ct. 281, 292, 88 L.Ed. 333 (1944).

11. 347 U.S. 672, 682, 74 S.Ct. 794, 799, 98 L.Ed. 1035 (1954). (Emphasis added.) It should be noted that Justice Clark, in dissent, conceded that "[o]n its face, this language brings every gas operator, *from the smallest producer to the largest pipeline*, under federal regulatory control." 347 U.S. 672, 691, 74 S.Ct. 794, 804 (emphasis added).

the extent that the Commission argues that Justice Clark's dicta in *Hunt* imply that exemption of a class of producers from the statutory standard would be permissible, we note that reliance cannot be placed on the NLRB as a model. The National Labor Relations Act specifically permits the Labor Board to decline to exercise its own jurisdiction.[12] In contrast, as evidenced by *Philips,* the Natural Gas Act does not give the Commission any such power. Only this year the Supreme Court specifically contrasted the FPC and the NLRB, suggesting that the former's jurisdiction will be broadly construed so that there are no "gaps" in the Natural Gas Act's "comprehensive and effective regulatory scheme."[13] Further, the trials and experimentations which this court has previously approved have always been trials of new procedures consistent with the terms of the Natural Gas Act, not experimental attempts to amend, avoid or ignore these provisions.[14]

The Commission relies heavily on *Permian Basin Area Rate Cases*[15] to support the proposition that it may exempt small producers from certain requirements. However, the "exemptions" approved there were from detailed filing requirements, not from all regulation. The Court in *Permian* specifically noted that "the exemptions created by the Com-

mission" were "fully consistent with the *terms* and purposes of its statutory responsibilities."[16]

■ Thus the Commission's power, under Section 16 of the Natural Gas Act, to "classify persons and matters within its jurisdiction" and to "prescribe different requirements for different classes" cannot validate this exemption of small producers. The Commission can only classify "[f]or the purposes of its rules and regulations." It can only prescribe rules and regulations "to carry out the provisions of this chapter." Section 16 thus does not give the Commission independent powers. Rather, it provides for implementation of the core sections of the Act, such as Section 4.

### B.

■ Nor can we accept the Commission's argument that it has met its obligation to insure the statutory standard of "just and reasonable" rates by indirectly controlling small producer prices through regulation of large producers and pipelines. That argument might have some merit if the Commission had provided that small producer rates could only be passed along on resale as legitimate costs if they met the "just and reasonable" standard.[17] In essence, that is

---

12. 29 U.S.C. § 160(a).

13. FPC v. Louisiana Power & Light Co., 406 U.S. 621, 631, 92 S.Ct. 1827, 32 L.Ed. 2d 369 (1972).

14. Deregulation is decidedly not one of the "policy decisions of the type [the FPC] . . . was created to make." See Public Service Commission v. FPC, 467 F.2d 361, 367.

15. 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed. 2d 312 (1968).

16. *Id.* at 787, 88 S.Ct. at 1370. (Emphasis added.)

17. However, in that event, we might have greater problems with the validity of subjecting the pipelines and large producers, who have made *unrefundable* payments to small producers, to the risk of *later* Commission determination, under such an imprecise standard, that the rates paid could not be passed along as legitimate

costs. The Commission itself, in Order No. 428–B, recognized that it would be desirable for "the pipelines to know in advance the boundaries within which they could freely contract with small producers." J. A. at 246. Unfortunately, in the case at bar, the Commission chose a "more concrete guide" with no relation to the mandatory statutory standard.

Judge Fahy has suggested modification of the Order to strike its provisions prohibiting refunds from small producers and to leave open the Commission's authority to protect large producers and pipelines from unreasonably high small producer prices. That approach would only compound the uncertainty and risk for all concerned. Moreover, it would defeat the basic purpose of the Order—encouraging exploration by assuring small producers of a steady flow of funds under their contract rates.

what the Commission was allowed to do in *Permian*. There, specific and direct regulation of small producer rates was held unnecessary because all such rates were required to be below the area ceiling rate—a rate level already determined by the Commission to be "just and reasonable." [18]

Here, however, the Commission set forth a different sort of guideline for its indirect regulation. The novel tests proposed are nowhere spelled out in the Act or in any decision applying the Act. Small producer rates can only be passed along to consumers if they are not

unreasonably high, considering appropriate comparisons with *highest contract prices* for sales by large pro-

ducers *or* the prevailing market price for *intrastate* sales in the same producing areas.[19]

Whether or not these two factors would establish precise boundaries on acceptable rates, the Commission has clearly tied its determination to factors which it does not regulate or which derive solely from market forces.[20] Large producers can, of course, *contract* for *any* prices, presumably in the hope that such payments may eventually be allowed under the regulatory scheme as legitimate costs actually incurred. *Intrastate* sale prices are at no point subject to regulation by the Commission.

The Commission has a duty to insure that all rates are "just and reasonable." [21] At best, the indirect controls it

18. When the Commission says on pages 16 and 17 in its brief that the only difference in its new scheme from that which the Supreme Court approved in *Permian* in 1968 is that now the small producers are allowed to exceed the area rate ceiling determined to be just and reasonable, then of course the Commission is saying that the whole issue in the lawsuit is no different from *Permian*. That just isn't so. The absence of such a "just and reasonable" limit *is* the big difference. Order No. 428 not only allows small producers to exceed the reasonable and just area rate ceilings—it allows them to do so on the basis of the free market, which is the antithesis of regulation.

19. J.A. at 142. These standards apply to both pipelines and large producers. In addition, large producers may reflect their increased payments in rate increases only if the contract price differential between their purchase and resale prices is "consistent with prevailing price differentials in the area." J.A. at 140.

20. In the different context of individual ratemaking proceedings, this court has insisted that the Commission's determinations be "anchored" to factors with some meaningful relationship to what is "just and reasonable." See City of Chicago v. FPC, 147 U.S.App.D.C. 312, 458 F.2d 731, 750 (1971), cert. denied, 405 U.S. 1074, 92 S.Ct. 1495, 31 L.Ed.2d 808 (1972) ; and City of Detroit v. FPC, 97 U.S.App.D.C. 260, 230 F.2d 810 (1955), cert. denied, 352 U.S. 829, 77 S.Ct. 37, 1 L.Ed.2d 48 (1956). As the court noted in *City of Detroit*, a new Com-

mission approach to regulation is not invalid merely because it departs from the traditional rate-base or cost-of-service methods. However, even granting the legitimacy of indirectly regulating small producer rates, the standards set forth in Order No. 428 have not been demonstrated to have any relationship at all to the statutory standard.

21. To the extent that new sales are covered by the blanket small producer certificates, the Commission has also abandoned any attempt to scrutinize the rates involved in such sales against Section 7's standard of "public convenience and necessity." Were that the only effect of Order 428, we might have a different case. If there remained a potential for future review under the standards of Sections 4 and 5, the "public convenience and necessity" might indeed be served by temporarily allowing certification of rates meeting the novel standards proposed by the FPC. Indeed, rates are "not . . . the only factor bearing on the public convenience and necessity." Atlantic Refining Co. v. Public Service Commission, 360 U.S. 378, 391, 79 S.Ct. 1246, 1255, 3 L.Ed.2d 1312 (1959). Unlike the situation in *Atlantic Refining*, small producer rates would probably not set a pattern for the whole industry. However, the Commission here abandoned *any* future rate review under the "just and reasonable" standard. In its more recent rulemaking Orders Nos. 455 and 455–A, the Commission seems to have admitted that it has no such power. Those Orders, consolidating the Section 4 and Section 7 tests

has proposed will insure that the small producer rates which are passed on to consumers are below levels set by private contracting parties (or potentially by state regulation which is not necessarily tied to the federal standard). Nothing at all insures that those levels will be "just" or "reasonable." That is the essential flaw in the Commission's plan. That is the point at which the FPC abdicates its regulatory responsibility in derogation of the purposes and mandatory terms of the statute. Indirect "regulation" by such novel "standards" is worse than an exemption simpliciter. Such an approach retains the false illusion that a government agency is keeping watch over rates, pursuant to the statute's mandate, when it is in fact doing no such thing.

One variant of the "indirect regulation" argument might contend that, while the *Commission* would no longer be regulating rates, the *market mechanism* itself would, in effect, dictate small producer prices which were "just and reasonable." However, though ingenious on a semantic level, that argument ignores the essential difference between a regulated and an unregulated industry. Put simply, the latter is governed by the market while the former, by definition, is the subject of active governmental control.

More importantly, such a post hoc rationalization does not coincide with the Commission's own view of its Order. The FPC flatly concedes that "[t]he Commission's order does not purport to determine the just and reasonable rates for sales by small producers." [22] To the contrary, the Commission's basic contention all along has been that the "just

and reasonable" standard was not mandatory and that the FPC can simply choose not to regulate rates. [23] It strains credulity to assert that the Commission meant to achieve just and reasonable rates through normal market forces, while in the very same Orders it refused to let pipelines and large producer plant operators pass on these "just and reasonable" rates without further review under new non-statutory standards. Since the Commission itself has not been confident enough to conclude that the market will necessarily yield rates that comply with the statute, this court can hardly uphold the Orders on that ground.

Our dissenting colleague believes that "[t]he Commission has made a judgment which I think is within the ambit of its competence and expertise not to require small producers to be bound to the area rate . . ., on an experimental basis." (P. 425) But the "area rates" are the previously Commission-determined "just and reasonable" rates, from which, no matter how one phrases it, the small producers will be exempt, even though on an experimental basis. It is significant that the Notice for this rulemaking proceeding was frankly titled *"Exemption* of Small Producers from Regulation." Our dissenting colleague correctly notes that the Order which issued carried the title "Order Establishing Blanket Certificate Procedure for Small Producer Sales and Providing Relief from Detailed Filing Requirements." This rose by another name carries the same thorns.

Judge Fahy notes that the Commission intends to review the results of its experiment. Presumably, if that review showed unjust and unreasonable rates develop-

---

in an optional certificate procedure for new gas sales, also sought to assure producers of certain receipt of their certified contract rates. In that context, the Commission conceded that "[w]e cannot bind a future Commission not to invoke the prospective operation of Section 5, nor do we attempt to do so." Mimeo, pp. 9–10. In marked contrast is the Commission's statement regarding Order No. 428: "We seek to assure the small producer

that when he enters into a new contract for the interstate sale of gas, the provisions of his contract will not be subject to change." We conclude that Order No. 455 contains the more correct view of the statutory limits on the Commission's power.

22. Commission's Brief at p. 35.

23. Joint Appendix at p. 136.

ing, the Commission would consider reinstating the regulatory scheme. However, even if it did so, the rates charged during the interim period would not have been subject to regulation. It seems most unlikely that any "further action to protect consumers" could legally reimburse those who made payments, valid under the Commission's own rules during that experimental period, were we to approve those rules here.

The Commission further defended its decision on the grounds that, given their limited percentage of the market, a rise in small producer prices will have no great effect on consumers.[24] We doubt that the effect of potentially allowing greater than area ceiling rates for 10.5% of the gas sold can be considered *de minimis*. In any case, the long-range impact of these orders on consumers lies more in the principle they establish than in any immediate effect on prices. We think it undeniable that the Commission could, under its theory of this case, proceed to establish another class of "medium" producers, and provide the same or different appropriate exemptions for this new class, and Commission counsel so conceded in oral argument. Likewise, the Commission could, again by its own fiat, change the definition of small producer to include those with greater volumes of jurisdictional sales.

If Order No. 428 is upheld, no limit appears which could halt gradual erosion of the statutory standard's applicability. Given the Commission's self-professed distaste for regulation, a decision upholding its approach here might soon yield further FPC decisions which made the instances where rates were determined by the "just and reasonable" standard the exception rather than the rule.

Whatever the wisdom of the policy at this critical juncture of our national energy source problems, we cannot hold that *non*regulation is the statutory equivalent of regulation. Only Congress can knowingly prescribe nonregulation for small producers in lieu of the existing statutory scheme of regulation found by the Supreme Court in *Phillips* to be mandatory under the Natural Gas Act for all producers.

### III. *Means to the Desired End*

■ All of this is not to say that a proper regulatory determination, within the letter and spirit of the Natural Gas Act, could not set a just and reasonable rate for small producers higher than that for large producers. Given the special problems and practices of small producers, such a result is certainly conceivable. But the small producers cannot be exempted from the regulatory scheme, and have their prices tied to the free market, by administrative agency fiat.

Nor is the scheme saved by the laudable purpose of the Commission, described by our dissenting colleague: "The Commission is attempting to learn whether under this program the small producers, relieved of much of the burden of regulation required of other classifications, can improve their exploratory efforts while charging rates which on review will nevertheless prove to be just and reasonable and which will not adversely affect the consumer interests protected by the Act." (P. 425) With all due respect to Judge Fahy and the Commission, what it is doing is experimenting to see if, after all, *non*regulation of the small producers, letting market forces shape the price structure, will not in the long run be better both for industry and consumer. Whether this be so or not, the place for authorizing such experiments outside the present language of the Act is in Congress.[25] And, as noted immediately

---

24. A *de minimis* effect on consumer prices seemed to weigh with the Court in *Permian* with regard to one of the approved "exceptions." 390 U.S. 747, 786–787, n. 56, 88 S.Ct. 1344, and accompanying text (1968).

25. The Congress could itself classify small producers, exempt them from regulation for a designated period of time, and meanwhile order the Commission to gather empirical data to see if this is beneficial to the industry and to consumers of natural

above in Part II, the means adopted by the Commission here are capable of being employed to the complete subversion of the regulatory scheme.

The Power Commission has made a conscientious and intelligent effort to cope with an enormous national problem. Where the Commission has failed is not in its diligence and its expertise. It has simply failed because the methods adopted do not square with its duties under the Natural Gas Act. This court's role, in regard to the actions of regulatory commissions, is to insure that such bodies comply with applicable legislation. The Commission's imagination and ingenuity here simply outran the statute. The place to bring these resources to bear is in Congress. If exemption is advisable, and the Commission appears to have made a powerful case that it is, Congress should have a receptive ear. In the interim, this court cannot ignore the statute or excuse the Commission from its duty.

Accordingly, the orders of the Commission in Docket No. R–393 are set aside.

So ordered.

FAHY, Senior Circuit Judge, dissenting:

I agree with the court that all rates and charges of any natural-gas company subject to the jurisdiction of the Natural Gas Act, which includes the small producers here involved, shall be just and reasonable and, if not, that they are unlawful. But we have no particular

gas. While we do not reach the details of the Commission's plan here, we should note that the different parties pointed out various inequities, each from its own point of view. The Commission might be well advised to make certain refinements in its overall plan before recommending it to Congress. In particular, the standards to be applied to resale by non-exempt producers and pipelines would benefit from greater precision—so that these businesses could know in advance what their position would ultimately be and would not have to rely on the good will of the Commission for their economic salvation.

rate or charge before us for scrutiny as to its justness or reasonableness. Order No. 428 of the Commission, before us for review, was made in a rule-making proceeding duly conducted. It passed upon no particular rate or charge of any or all small producers. It laid down certain guides within which small producers may contract for sales of their gas. It is properly entitled by the Commission as an "Order Establishing Blanket Certificate Procedure for Small Producer Sales and Providing Relief from Detailed Filing Requirements." The Commission explicitly relies upon the Supreme Court decision in Permian Basin Area Rate Cases, 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968), to the effect that under section 16 of the Act,[1] for purposes of its rules and regulations, the Commission may "classify persons and matters within its jurisdiction and prescribe different requirements for different classes of persons or matters." It cannot be questioned that it is within the power of the Commission separately to classify small producers.[2] The question really is whether the rules or regulations applied to this classified group are within the Act. More precisely, as it seems to me, the question is whether we can hold, on the record before us, that the type of regulation of prices adopted by the Commission has led or will lead inevitably to unjust or unreasonable rates charged by small producers to purchasers of gas from them, notwithstanding

[a] presumption of validity . . . attaches to each exercise of the Com-

1. 15 U.S.C. § 717(o) (1970).

2. *Permian, supra,* 390 U.S. at 787, 88 S.Ct. at 1370, where the Supreme Court stated: The problems and public functions of the small producers differ sufficiently to permit their separate classification, and the exemptions created by the Commission for them are fully consistent with the terms and purposes of its statutory responsibilities. It is not without relevance that this Court has previously expressed the belief that similar arrangements would ameliorate the Commission's administrative difficulties.

mission's expertise, and those who would overturn the Commission's judgment undertake "the heavy burden of making a convincing showing that it is invalid because it is unjust and unreasonable in its consequences" . . .

. . . [It] must be free, within the limitations imposed by pertinent constitutional and statutory commands, to devise methods of regulation capable of equitably reconciling diverse and conflicting interests.

*Permian, supra*, 390 U.S. at 767, 88 S.Ct. at 1360.

The Commission has made a judgment which I think is within the ambit of its competence and expertise [3] not to require small producers to be bound to the area rate and certain filing requirements, on an experimental basis.[4] A higher rate than that previously fixed for the industry in the area may be just and reasonable for the small producer as a separate classification within the area. The Commission is attempting to learn whether under this program the small producers, relieved of much of the burden of regulation required of other classifications, can improve their exploratory efforts while charging rates which on review will nevertheless prove to be just and reasonable, and which will not adversely affect the consumer interests protected by the Act. The Order provides:

We intend to review the prices established in new contracts or contract amendments relating to sales by small producers to assure the reasonableness

of the rates charged by such producers pursuant to the action we are taking herein. In the event we determine that this approach is inimical to the interests of consumers, we shall take further action to protect consumers.

The Commission is attempting "to reach an accommodation of conflicting interests, through experimentation, that will result in the proper alleviation of the gas shortage." Public Service Commission of the State of New York v. FPC, 151 U.S.App.D.C. 307, 467 F.2d 361 (1972).

I do not think the Commission has abdicated its responsibility to insure that rates of small producers will be just and reasonable. It does not appear from the record before us that any such price that might be charged is necessarily unjust or unreasonable. It is the Commission's assumption, given the small percentage of gas sales the small producers account for, and given their situation within the industry, that the rates to be collected from their sales of gas under this new plan will in fact be just and reasonable. The record before us does not rebut this assumption. Moreover, consumer protection is promised, and I cannot now hold that the promise will not be fulfilled. The Commission states:

The action taken here in our view does not constitute deregulation of sales by small producers. We will continue to regulate such sales but will do so at the pipeline level by reviewing the purchased gas costs of each pipeline with respect to small producer sales. We shall also provide certain other safeguards against unreasonably

---

3. Recently, in FPC v. Louisiana Power and Light Co., 406 U.S. 621, 642, 92 S.Ct. 1827, 1839, 32 L.Ed.2d 369 (1972) the Court referred to the Commission's authority under section 16 of the Act as follows:

[T]he Commission must possess broad powers to devise effective means to meet these responsibilities. FPC and other agencies created to protect the public interest must be free, "within the ambit of their statutory authority, to make the pragmatic adjustments which may be called for by particular circumstances." . . . Section 16 of the Act assures the FPC the neces-

sary degree of flexibility. . . . In applying this section, we have held that "the width of administrative authority must be measured in part by the purposes for which it was conferred. . . . Surely the Commission's broad responsibilities therefore demand a generous construction of its statutory authority."

4. The court is not bound by Commission counsel's response during argument that the Commission could establish a class of "medium" producers for regulation similar to that which Order No. 428 applies to small producers.

high small producer prices, as hereinafter discussed, to assure adequate protection of the consumer.

I have considered the contention that Order No. 428 discriminates against large producers vis-a-vis pipelines, but I find in this, as in other contentions made, no reason to depart from my basic position that as the matter now comes before the court the Order should not be set aside.

I would, however, modify Order No. 428 in one respect. I would strike its provisions prohibiting refunds to pipelines and large producers, leaving open to the Commission to exercise such authority as it has to protect large producers and pipelines in the event the Commission finds they have been charged unreasonably high prices by small producers. As thus modified I would affirm Order No. 428 and its alphabetical series. Should such a modification temper to a degree the charges of small producers, I think that result must be accepted as required by the public interest represented by the Act. I do not think such possible tempering would go so far as to defeat the purposes of Order No. 428.

I respectfully dissent.